

NUMBER 13-07-00522-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

FLORENCIO SAUCEDA AND
MARGARET SAUCEDA,                                          Appellants,

v.

GMAC MORTGAGE CORPORATION AND
FEDERAL NATIONAL MORTGAGE ASSOCIATION,          Appellees.

On appeal from the 148th District Court
of Nueces County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Benavides
Opinion by Chief Justice Valdez**

Appellants, Florencio and Margaret Sauceda ("the Saucedas"), appeal the summary

judgment rendered against them and in favor of GMAC Mortgage Corporation and Federal

National Mortgage Association (collectively "GMAC"). In two issues, the Saucedas contend

that GMAC waived its objections to their affidavits and that the trial court erred in granting summary judgment on their wrongful foreclosure and breach of contract claims. We reverse and remand.

## I. BACKGROUND

On August 8, 1995, the Saucedas purchased a home in Robstown, Texas that was secured by a $124,000 note. The Saucedas fell behind on their mortgage payments, and in 2005, GMAC instituted foreclosure proceedings. GMAC purchased the home for $88,819.03 at a foreclosure sale on August 2, 2005.

On January 23, 2006, the Saucedas sued GMAC for wrongful foreclosure and breach of contract. The Saucedas alleged that GMAC sent conflicting collection letters; did not properly notify them of the foreclosure; improperly appointed multiple trustees under the deed of trust; and could not lawfully foreclose because they were enrolled in a "Home Retention Program." They alleged that the aforementioned actions were deviations from Texas law and the note. According to the Saucedas, these deviations created an irregularity at the foreclosure sale, evidenced by a sale price that was only eighty percent of the market value of their home. The Saucedas prayed that the foreclosure be set aside, the title be quieted, the purchase money note and deed of trust be reinstated, and they be awarded attorney's fees and court costs.

Attached to the Saucedas' original petition are, among other things, two collection letters. The first letter, dated May 27, 2005, claimed that the Saucedas owed $55,795.14. The second letter, dated June 2, 2005, contained the caption, "THIS LETTER IS SENT IN CORRECTION OF THE PREVIOUS LETTER SENT ON MAY 27, 2005," and it claimed that the Saucedas owed $111,911.33. Florencio alleged that he spoke with a GMAC

2

attorney after receiving the two letters and disputed the amount owed. According to the Saucedas, GMAC could not foreclose until the amount of the deficiency was clarified, but GMAC foreclosed without any clarification.

GMAC answered with a general denial and asserted the affirmative defenses of prior material breach, waiver, and estoppel. GMAC also counterclaimed for possession of the property. On May 7, 2007, GMAC moved for summary judgment on no-evidence and traditional grounds. GMAC argued that the Saucedas had no evidence that there were irregularities in the foreclosure sale. It also argued that the debt dispute was resolved prior to foreclosure; multiple trustee appointments were permitted; the foreclosure purchase price was adequate; the Saucedas had ample notice; the Saucedas were not enrolled in a "Home Retention Program;" and there was no basis for a breach of contract claim.

The Saucedas responded to GMAC's summary judgment motions on May 22, 2007. As evidence, the Saucedas attached affidavits executed by Florencio and Margaret. Florencio's affidavit states, in relevant part:

> I never received a notice of default, demand for payment or notice of intent to accelerate that gave me a twenty or thirty day opportunity to cure the default by paying the back payments.
>
> I did receive a letters [sic] from Codilis & Stawiarski demanding $55,795.14 dated May 27, 2005 and a letter dated June 2, 2005 demanding $111, 911.33. These letter [sic] did not give me an opportunity to cure the default by paying the back payments.
>
> I personally went to Houston and met with Kevin Jones of Codilis & Stawiarski on June 13, 2005 to contest the default and the amount owing. I also gave a written letter disputing the debt to Codilis & Stawiarski.
>
> I was working with GMAC in what I believed was [its] Home Retention Program. The representatives of GMAC led me to believe that I could work with the program and avoid foreclosure. I sent the information they requested by fax.

It is my opinion that my property that was allegedly foreclosed has a fair market value at the time of the foreclosure of $250,000. If I lose my home, I will suffer great economic and personal loss.

. . . .

I never received the certified letters advising [me] of the foreclosure sale. I never received any postal slips indicating that I had certified letters waiting to be picked up, other than the two letters mentioned above that I acknowledge receiving.

The affidavit was "SUBSCRIBED AND SWORN TO." Margaret's affidavit recites substantially similar allegations. On June 1, 2007, GMAC filed written objections to Florencio's and Margaret's affidavits and argued that the affidavits were not based on personal knowledge and lacked the necessary factual specificity required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 166a. The record does not contain an explicit ruling on GMAC's objections.

On June 5, 2007, GMAC nonsuited its counterclaims against the Saucedas. On June 8, 2007, the trial court granted GMAC summary judgment without providing a rationale. This appeal ensued.

## II. AFFIDAVIT TESTIOMONY

By their first issue, the Saucedas contend that their affidavits are part of the summary judgment record because GMAC's objections were not ruled on by the trial court, and therefore, its objections were waived. GMAC responds by arguing that its objections went to the substance of the Saucedas affidavits and that it did not need to obtain a ruling from the trial court to preserve its complaint.

Regardless of whether GMAC's objections were to form or substance, it is clear

4

from the context of the affidavit that Florencio and Margaret gave affidavit testimony as to their personal knowledge and represented what they believed to be the true and correct facts. *See Bunker v. Landstar Ligon, Inc.*, 136 S.W.3d 372, 376 (Tex. App.–Corpus Christi 2004, no pet.) (providing that an affidavit demonstrated the basis of the affiant's personal knowledge based upon the affiant's position). The Saucedas' first issue is sustained.

### III. SUMMARY JUDGMENT

By their second issue, the Saucedas contend that the trial court erred in granting summary judgment because their affidavit testimony established a fact issue regarding whether they were properly served with the notice of debt acceleration. They further contend that the lack of proper service created an irregularity in the foreclosure sale, which is an element in a wrongful foreclosure action. GMAC responds by arguing that the Saucedas had ample notice of foreclosure and that there were no other irregularities in the foreclosure sale.

### A.     Standards of Review

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

5

Texas Rule of Civil Procedure 166a(i) provides that "a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof." TEX. R. CIV. P. 166a(i). The trial court must grant the motion if the non-movant does not produce summary judgment evidence raising a genuine issue of material fact on each element challenged. *Id*.; *Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The non-movant must produce more than a scintilla of probative evidence to raise an issue of material fact. *Oasis Oil Corp. v. Koch Ref. Co.*, 60 S.W.3d 248, 252 (Tex. App.–Corpus Christi 2001, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

We "must examine the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Moreover, "when a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

**B.  Wrongful Foreclosure**

The elements of a wrongful foreclosure claim are:  (1) a defect in the foreclosure

6

sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.–Houston [14th Dist.] 1989, writ denied). The property code provides:

> (b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
>
> (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
>
> (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
>
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.
>
> . . . .
>
> (e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

TEX. PROP. CODE ANN. § 51.002 (Vernon Supp. 2007). The Saucedas argue that their testimony regarding lack of service constitutes some evidence of a defect in the foreclosure sale proceedings. We agree.

As summary judgment evidence, GMAC furnished the trial court with an affidavit by Mary Speidel, GMAC's attorney, in which she avers that "[t]he holder of the referenced debt caused the Notice of Trustee's Sale and Notice of Acceleration and Posting to be

mailed by Certified Mail, Return Receipt Requested to all obligors according to the records of the holder, at least twenty-one (21) days preceding the date of sale." This affidavit constitutes prima facie evidence under section 51.002(e) of the property code. *See id.* § 51.002(e). Florencio, however, presented controverting testimony that he never received the certified letters advising him of the foreclosure sale.

Thus, a fact issue remained as to whether the Saucedas were served with the notice that section 51.002(b)(3) of the property code required. *See id.* § 51.002(b)(3); *but see Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-708-CV, 2008 Tex. App. LEXIS 3935, at *11 (Tex. App.–Houston [1st Dist.] May 29, 2008, no pet.) (holding that the dispositive inquiry under section 51.002(e) of the property code is not receipt of notice, but, rather, service of notice). The trial court, therefore, erred in granting summary judgment against the Saucedas on their claim for wrongful foreclosure.

## C.    Breach of Contract

The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.–San Antonio 1998, pet. denied). The Saucedas contend that GMAC failed to provide notices as required by the deed of trust.[1] The deed of trust provides:

> Acceleration; Remedies.  Lender shall give notice to Borrower prior to

---

[1] The Saucedas also argue that the conflicting demand letters, enrollment in a "Home Retention Program," and appointment of multiple trustees constitutes some evidence of their claims, but they do not specify which claims. Even if this evidence related to the breach of contract claim, the arguments are advanced without citations to relevant authority and, therefore, they are inadequately briefed. TEX. R. APP. P. 38.1(h).

acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) **a date**, not less than 30 days from the date notice is given to Borrower[,] by which the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. . . .

(emphasis added). GMAC contends that there is no evidence that it breached the aforementioned notice provisions. We disagree.

As summary judgment evidence, GMAC provided two default letters, one dated May 27, 2005, and another dated June 2, 2005. Both letters are substantially similar, and neither letter contains "a date, not less than 30 days from the date notice is given to Borrower[,] by which the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property." Thus, GMAC's own evidence constitutes some evidence that it did not perform the notice obligations that it promised in the deed of trust. The Saucedas' second issue is sustained.

## IV. CONCLUSION

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Opinion delivered and filed
this the 26th day of August, 2008.

9